```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION

RICHARD MUSTO,

                        Plaintiff,

vs.                                  Case No.  2:07-cv-231-FtM-29DNF

TRINITY FOOD SERVICES, INC. AND LEE
COUNTY   DEPUTIES:  MIKE  HENNESSY,
SALVATORE  ZAMBO,  ANGELO  LNU, FNU
BLUE, ANNA LNU, FNU ROGERS, J.
ROGERS, FNU KRUKOWSKI, FNU POKLEMBA,
FNU OVERBEE, FNU PYLE, FNU RESENDES,
J. SMITH, FNU WELCH, and CHAPLAIN
FNU CAMP,

                        Defendants.
_____
```

## **OPINION AND ORDER**

This matter comes before the Court upon review of the Motion to Dismiss filed on behalf of Defendants Justin Rogers, Jared Rogers, Leonard Krukowski, Ryan Poklemba, Donald Oversee, Dathan Pyle, Mark Resendes, FNU Smith, Alan Welch, Reverend Gerry Camp, and Ryan Dekeyeser[1] (collectively referred to as the "Lee County Defendants") filed April 25, 2008 (Doc. #69, Lee County Defendants' Motion). The same day, Defendants Compass Group USA., d/b/a Trinity Services Group, Inc., Michael Hennessy, Salvatore Zumbo, Angelo DiLeo, Yvonne Blue, and Ana Cabrera (collectively referred to as the "Trinity Defendants") filed a Notice of Joinder in the Lee County Co-

---

[1]Although the Motion is filed on behalf of Ryan Dekeyeser, the Complaint does not identify a Defendant by the name "Ryan Dekeyeser" or "Dekeyeser."

Defendants' Motion to Dismiss (Doc. #70, Trinity Joinder).[2]  After being directed by the Court, Plaintiff filed a response to the Motions (Doc. #73, Response) on June 25, 2008.  This matter is now ripe for review.

**I. Status**

Plaintiff, Richard Musto ("Plaintiff" or "Musto"), initiated this action by filing a *pro se* civil rights complaint form (Doc. #1, Complaint) on May 2, 2007, as a pretrial detainee being held at the Lee County Jail Stockade.  Complaint at 1.  Plaintiff attaches 91 pages of exhibits to his Complaint (Docs. #1-2, #1-3, and #1-4).  The various exhibits, contain, *inter alia*, inmate requests, inmate disciplinary reports, inmate grievance forms, and inmate complaints submitted by Plaintiff while at the Lee County Jail.  The Complaint alleges First, Eighth and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 and the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, and violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq. Complaint at 10.  Plaintiff sues all of the Defendants in both their individual and official capacities.  Id. at 21.  As

---

[2]Counsel for the Lee County Defendants and the Trinity Defendants aver that each of the identified Defendants were "incorrectly named in the Complaint." See generally Lee County Motion and Trinity Joinder.  It appears that Defendant Poklemba's surname was incorrectly spelled as "Poklemba."  The other Defendants were not "incorrectly named," but appear to have been identified by Plaintiff by only their respective surnames.

relief, Plaintiff seeks $1,500,000 in compensatory, nominal and punitive damages. Id.

The Lee County Defendants seek dismissal of the Complaint on the grounds that: 1) Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a); 2) the allegations of the Complaint do not rise to a constitutional violation; 3) Plaintiff is not entitled to monetary damages because be fails to allege a physical injury; and 4) Defendants are entitled to qualified immunity. Lee County Defendants' Motion at 1-2. The Trinity Defendants, in their two-page motion, seek to join in the Lee County Defendants' Motion. See generally Trinity Joinder.

## II. Applicable Law

In deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004); Fed. R. Civ. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Thus, the Court must accept all factual allegations in Plaintiff's Complaint, as well as the facts set forth in the numerous exhibits attached to his Complaint, as true and take them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008). The Court need not accept unsupported conclusions of law or of mixed law

and fact in a complaint. Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1968-69 (2007) (citations omitted) (abrogating Conley v. Gibson, 355 U.S. 41 (1957) and stating that Conley did not set forth the minimum standard governing a complaint's survival under a motion to dismiss, rather the case "described the breadth of opportunity to prove what an adequate complaint claims"). With respect to § 1983 cases that involve individuals entitled to assert qualified immunity, the Eleventh Circuit imposes "heightened pleading requirements." Swann v. Southern Health Partners, Inc., 388 F.3d 834, 836-838 (11th Cir. 2004)(citing Leatherman v. Tarrant County, 507 U.S. 163 (1993)); Laurie v. Ala. Court of Crim. Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001). This heightened pleading standard requires a plaintiff to allege the facts supporting a § 1983 claim with some specificity. See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367, 1368 (11th Cir. 1998) (stressing "that the heightened pleading requirement is the law of this Circuit"). Because Plaintiff is

proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)). Nevertheless, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).

Section 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiff must prove that: (1) defendant deprived him of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).

As explained in Smith v. Allen, 502 F.3d 1255 (11th Cir.2007), the RLUIPA states that:

> "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government can demonstrate that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Section 3 of RLUIPA thereby affords to prison inmates a

> "heightened protection from government-imposed burdens,"
> by requiring that the government demonstrate that the
> substantial burden on the prisoner's religious exercise is
> justified by a compelling, rather than merely a
> legitimate, governmental interest. See <u>Warsoldier v.
> Woodford</u>, 418 F.3d 989, 994 (9th Cir. 2005)(citation
> omitted). In doing so, section 3 affords confined persons
> "greater protection of religious exercise than what the
> Constitution itself affords." <u>Lovelace v. Lee</u>, 472 F.3d
> 174, 186 (4th Cir. 2006). Section 3 applies whenever "the
> substantial burden on religious exercise is imposed in a
> program or activity that receives federal financial
> assistance." 42 U.S.C. § 2000cc-1(b)(1).

502 F.3d at 1266. To establish a *prima facie* case under section 3 of RLUIPA, a plaintiff must demonstrate that: 1) he engaged in a religious exercise; and 2) the religious exercise was substantially burdened. See <u>Atkins v. Kasper</u>, 393 F.3d 559, 567 (5th Cir. 2004); U.S.C. 2000cc-1(a). The plaintiff "bear[s] the burden of persuasion on whether the . . . government practice that is challenged by the claim substantially burdens the exercise of religion." 42 U.S.C. § 2000cc-2(b). If the plaintiff succeeds in demonstrating a *prima facie* case, the government must then demonstrate that the challenged government action is "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000cc-1(a) 2000cc-2(b).

### III. Motions to Dismiss

**<u>Trinity Motion</u>**

At the outset, the Court notes that the Trinity Defendants, although filing a Notice of Joinder in Lee County Co-Defendants

Motion to Dismiss, fail to include a memorandum of law in support of their motion. See Local Rule 3.01 (a) (M.D. Fla). Further, on April 15, 2008, ten days before the filing of the Notice of Joinder, the Trinity Defendants filed an Answer to Plaintiff's Complaint (Doc. #67.) A motion to dismiss is improper, once a responsive pleading has been filed. Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002). Consequently, the Court will deny the Trinity Defendants request for dismissal of Plaintiff's Complaint, contained within their Notice of Joinder in Lee County Co-Defendants' Motion to Dismiss (Doc. #70), as moot.

**Lee County Motion**

**1.   Exhaustion of Administrative Remedies**

With respect to the exhaustion issue, the Lee County Defendants contend that Plaintiff has failed to exhaust his administrative remedies and cite to the three step process set forth in the Florida Administrative Code Chapter 33-103. Lee County Defendants' Motion at 7. In particular, the Lee County Defendants submit that Plaintiff "has failed to file appeals with the [S]ecretary [of the Florida Department of Corrections]." Id. at 7-8. Plaintiff, in his Response, asserts that, although he is currently in the custody of the Department of Corrections, he was not at he time of the alleged incidents. Response at 1.

The Prison Litigation Reform Act (hereinafter "PLRA"), which amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, provides as follows:

> (a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted.**

42 U.S.C. § 1997e(a)(emphasis added).

The PLRA's exhaustion requirement is intended to: (1) "eliminate unwarranted federal-court interference with the administration of prisons," (2) "'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,'" and (3) "'reduce the quantity and improve the quality of prisoner suits.'" Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006)(quoting Porter v. Nussle, 534 U.S. 506, 524-25 (2002)) (internal footnote and citations omitted). As a result of the PLRA, consideration of "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." Woodford, 126 S. Ct. at 2382; (referencing Booth v. Churner, 532 U.S. 731, 739 (2001)). See also Bryant v. Rich, 530 F.3d 1368, 1372 (11th Cir. 2008). Additionally, the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

involve excessive force or some other wrong doing. Woodford, 126 S. Ct. at 2382; Nussle, 534 U.S. at 532; Booth, 532 U.S. at 741. Inmates, however, "are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 127 S. Ct. 910, 921 (2007). Rather, pursuant to the PLRA, failure to exhaust administrative remedies is an affirmative defense. Id.

"[T]he PLRA exhaustion requirement requires **full** and **proper** exhaustion."[3] Woodford, 126 S. Ct. at 2387 (emphasis added). Accordingly, in Johnson v. Meadows, 418 F.3d 1152 (11th Cir. 2005), the Eleventh Circuit, noting the "policies favoring exhaustion," held that the PLRA contains a procedural default component which arises where an inmate fails to avail himself in a timely fashion of an institution's administrative process. Id. at 1156, 1159, cert. denied, Johnson v. Meadows, 126 S. Ct. 2978 (2006). Thus, where an inmate's grievance is denied by penal authorities on the basis that the inmate failed to timely pursue all of administrative remedies, the inmate is barred from bringing a future federal action on that claim since the inmate cannot demonstrate full exhaustion of remedies. See id. at 1158.

---

[3]"[A] prisoner should include as much relevant information as he reasonably can in the administrative grievance process." Brown v. Sikes, 212 F.3d 1205, 1207-1208 (11th Cir. 2000).

Whether an inmate has exhausted his available administrative remedies is a factual issue that is properly made by the court. Bryant v. Rich, 530 F.3d at 1374. Thus, "[e]ven though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits." Id. (footnote, internal quotations, and citations omitted). The defense of exhaustion is properly raise in a motion to dismiss as a "matter of judicial administration." Id. at 1375-76. Thus, the court is permitted to look beyond the pleadings to decide disputed issues of fact in connection with the exhaustion defense. Id. at 1377, n.16.

The Court finds the Lee County Defendants' exhaustion argument is unsound and is based upon fallacious reasoning. Defendants fail to point to any authority that requires a detainee or inmate confined within the Lee County Jail to adhere to the Chapter 33 of the Florida Administrative Code. In fact, the statutory language makes clear that the three step established inmate grievance procedure found in Chapter 33 applies only to inmates in the Department of Correction's custody. Fla. Admin. Code, r. 33-103.001-019. Consequently, the Court will deny the Lee County Defendants' Motion to Dismiss to the extent it seeks dismissal of

-10-

the Complaint due to Plaintiff's failure to exhaust his administrative remedies.

### 2. Failure to State a Claim

Finding no basis to dismiss Plaintiff's Complaint for Plaintiff's failure to exhaust his administrative, the Court will address the merits of Plaintiff's Complaint. Liberally construing the *pro se* Complaint, Plaintiff alleges that various named Defendants: 1) violated the RLUIPA by failing to provide nutritionally adequate kosher meals and failing to permit a Rabbi to visit inmates held at the Stockade; and, 2) violated Plaintiff's First Amendment rights by denying him free exercise of religion and retaliating against him for filing grievances. The Lee County Defendants submit that the "conduct alleged by Plaintiff does not rise to the level of a constitutional deprivation." Lee County Motion at 8. Further, the Lee County Defendants claim that they are entitled to qualified immunity. Id. at 12. Finally, the Lee County Defendants argue that Plaintiff is "precluded from claiming monetary and punitive damages pursuant to 42 U.S.C. § 1997e(a)." Id. at 13.

#### a. RLUIPA

The Lee County Defendants fail to specifically address Plaintiff's claims made pursuant to the RLUIPA. Plaintiff alleges that, although Defendant Chaplain Camp approved him for a kosher meal, the kosher meals were nutritionally inadequate. In

particular, due to the kosher meals' nutritional deficiency, Plaintiff switched to the vegan diet in an effort to consume a sufficient amount of calories while trying to maintain his religious observance. Further, Plaintiff claims that Defendant Chaplain Camp allows a Rabbi to visit the inmates who are housed in "CPU Units," but will not permit a Rabbi to visit the inmates who are housed in the Stockade. See generally Complaint and attachments thereto.

The Court finds the Complaint sufficiently states a claim pursuant to RLUIPA against the Lee County Defendants in their official capacities for nominal damages, but fails to state a claim against the Lee County Defendants in their individual capacities. Smith v. Allen, 502 F.3d at 1275-1276; Hathcock v. Cohen, 287 Fed. Appx. 793, 798-99 (11th Cir. 2008). Therefore, the Lee County Defendants' Motion will be granted to the extent that it seeks dismissal of the Complaint for failure to state a claim under the RLUIPA in their individual capacities, and denied as to the RLUIPA claims in their official capacities.

### b. Civil Rights Act - Free Exercise of Religion

With respect to his First Amendment free exercise of religion claim, Plaintiff states that he was denied "Kosher dietary meals," appropriate Jewish materials, such as the Torah, and visits from a Rabbi. Complaint at 10-11. In support of his free exercise claim, Plaintiff states that he "is a person of Hebrew descent," was born

of the Jewish faith, and "practices it fully." Id. at 10. Plaintiff states that Defendant Camp "approved kosher diet," but he "declined [Plaintiff's] fasting observations and proper assistance in securing meals before and after sunrise and sunset according to the religious laws." Id. at 17. Further, Defendant Camp denied Plaintiff's request to receive rabbinical visits. Id. at 11.

Plaintiff's allegations that he was denied a religious fast, and access to religious materials including the Torah and visits with a Rabbi, which are consistent with Plaintiff's purported sincerely held Jewish beliefs, state a valid claim under § 1983. See Turner v. Safley, 482 U.S. 78, (1987); Beerheide v. Suthers, 286 F.3d 1179 (10th Cir. 2002); DeHart v. Horn, 227 F.3d 47 (3d Cir. 2000); Eason v. Thaler, 14 F.3d 8 (5th Cir. 1994). Consequently, the Court finds that Plaintiff has adequately stated a First Amendment free exercise of religion claim under the Twombly standard against Defendant Camp.

### c. Civil Rights Act - Retaliation

With respect to his retaliation claim, Plaintiff claims that, as result of filing grievances in connection with his requests for religious meals and materials, he was subjected to verbal abuse, falsely disciplined, improperly placed into a suicide watch cell, and has had personal materials improperly confiscated as contraband. Complaint at 11. In particular, Plaintiff claims that Defendant

Rogers called him a "scum bag jew" and threatened "to get rid of [Plaintiff] on way or another." He would then "daily" comment to Plaintiff that "your [sic] still here jew boy. Let [sic] see how long that last!" Id. at 13-14. Finally, on January 14, 2007, Plaintiff was "ejected" by Defendants Rodgers and Krukowski from "life skills" for allegedly "writing a letter in the bunk area after 8:00 p.m." Id. at 14. Plaintiff claims, however, that his ejection form CPU II "was for Deputy Rogers delight, not writing in the bunk area, nor any other reason." Further, Defendants Rogers and Krukowski threatened Plaintiff with a "tazer gun and gas." Id.

With respect to Defendants Oversee, Pyle, J. Rogers and Welch, Plaintiff states that they continued the harassment once he arrived at the Stockade and made "false claims" that Plaintiff threatened to hurt himself and commit suicide. Further, Plaintiff alleges that these deputies directed other inmates to "write up these facts" after the deputies took away certain privileges from the other inmates, like the television, and agreed to restore the privileges if the inmates did as asked. Id. at 15-16. Although not entirely clear, it appears that Plaintiff was placed on suicide watch for a short period of time, until he explained the situation to "Mrs. Wheeler" and "the doctor." Id. at 16. Additionally, Plaintiff states that these deputies took canteen items from him, and Defendants Resendes and Smith held back his food. Defendant

Resendes also would call Plaintiff "a little piece of shit, Jew bastard, crying little faggot." Id. On March 13, 2007, Defendants Resendes, Welch, J. Rogers and Pyle threatened to place Plaintiff back into the suicide cell again. Id. at 19.

It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). An inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints if the inmate established these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the prison official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005); Smith v. Mosley, 2532 F.3d 1270, 1276 (11th Cir. 2008). Here, Plaintiff has raised sufficient facts to state a possible First Amendment retaliation claim against Defendants Rogers, Krukowski, Polkemba, Overbee, Pyle, J. Rogers, Resende, and Welch. The Plaintiff specifically alleges that the various named Defendants engaged in acts of retaliation in response to Plaintiff's protected activity of

verbally complaining, stating that he was going to file a grievance, and by actually filing grievances. Thus, the Court finds that Plaintiff has sufficiently stated a retaliation claim under the First Amendment against the above named Defendants.

Having found that the Complaint adequately states constitutional violations against the Defendants, the Court further concludes that pre-existing law gave Defendants fair and clear warning that such actions were unlawful.[4] Accepting the factual allegations in the Complaint as true and drawing all reasonable inferences therefrom in Plaintiff's favor, the Court finds that Defendants are not entitled to the protection of qualified immunity at this Rule 12(b)(6) stage of the litigation.

Further, while Plaintiff does not claim to have suffered any physical injuries, Section 1997e(e) does not preclude the award of nominal damages where a plaintiff prevails on a constitutional § 1983 claim, Hughes v. Lott, 350 F.3d 157. 1162 (11th Cir. 2003), or on a claim against defendants in their official capacities under the RLUIPA, Smith, 502 F.3d at 1270-71, 1275-76. Plaintiff's claim for more than nominal damages will therefore be stricken.

ACCORDINGLY, it is hereby

**ORDERED:**

---

[4] The Court notes that this finding is without prejudice to Defendants' ability to revisit this matter on summary judgment, if appropriate.

1. The Trinity Defendants request for dismissal of Plaintiff's Complaint, contained within their Notice of Joinder in Lee County Co-Defendants' Motion to Dismiss (Doc. #70), is **DENIED as moot.**

2. The Lee County Defendants' Motion to Dismiss (Doc. #69) is **GRANTED** as to plaintiff's claim under the RLUIPA as to the Lee County Defendants in their individual capacities, and is otherwise **DENIED.** Plaintiffs request for damages other than nominal damages is **STRICKEN.** The Lee County Defendants shall file an Answer to the remainder of Plaintiff's Complaint **within twenty (20) days** of the date of this Opinion and Order.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___20th___ day of February, 2009.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record